## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,
Plaintiff,

v.                                              Criminal No. 00-108 (DRD)

[1] FERNANDO GOMEZ-ROSARIO,
Defendant.

### UNITED STATES' MOTION TO VACATE ORDER OF MAY 23, 2003

TO THE HONORABLE COURT:

COMES NOW the United States of America, by and through its undersigned attorneys ,

and very respectfully states, alleges, and prays as follows:

On May 22, 2003, a hearing was held related to a number of issues in the above-captioned

case.  See Minutes of Proceedings, Docket No. 302.  One of the issues addressed was Defendant

[1] Fernando Gomez-Rosario's (hereinafter "the Defendant") access to and use of the law library

at the Metropolitan Detention Center (M.D.C.).  On May 23, 2003, the Court issued an Order

stating that the Defendant was to be provided with maximum access to the law library and legal

publications, and that "any copies required with respect to same be provided without fee or cost

to the defendant."(emphasis added).  See Docket No. 303.

The United States recognizes that prisoners have a constitutional right of meaningful

access to the courts through adequate law libraries or adequate assistance from persons trained in

law.  Bounds v. Smith, 430 U.S. 817, 828 (1977).  The Constitution, however, does not guarantee

a prisoner's unlimited access (emphasis added) to a law library, and prison officials, by necessity,

must regulate the time, manner, and place in which library facilities are used.  Sands v. Lewis,

U.S. Motion to Vacate Order of May 23, 2003
U.S. v. [1] Fernando Gómez-Rosario
Criminal No. 00-108 (DRD)
Page No. 2

886 F.2d 1166, 1169 (9th Cir. 1989).

It is the prisoner's responsibility to abide by the prison's rules and regulations to request

legal research, and follow administrative procedures when alleging denial of access to the law

library. Since the Defendant: 1) did not exhaust the administrative remedy procedures available

through the Bureau of Prisons; 2) did not follow the procedures to request legal research

materials and, 3) incurred and has continue to incur disciplinary problems related to the law

library, the United States requests that this Honorable Court vacate its May 23, 2003 Order.

## I. The Defendant Has Not Exhausted the Administrative Remedy Procedures Available Through the Bureau of Prisons.

The Metropolitan Detention Center (M.D.C.)-Guaynabo is administered by the Bureau of

Prisons. The Bureau of Prisons has a grievance procedure available for complaints of the type

the Defendant has brought in this case. The Defendant's administrative remedies are

encompassed at 28 C.F.R. § 542.10, et seq., and provide formal review of any complaint which

relates to any aspect of the inmate's confinement. Under this process, M.D.C.-Guaynabo inmates

are encouraged to first attempt an informal resolution of their complaints by discussing the

matter with a member of their Unit Team. A record of that attempt is signed by the inmate and a

member of the Unit Team. If informal resolution is insufficient to resolve the matter, the inmate

may file a formal complaint with the Warden within fifteen (15) days of the date on which the

basis of the complaint occurred. 28 C.F.R. § 542.13. If the inmate is not satisfied with the

Warden's response, he may appeal to the Regional Director. If the inmate is dissatisfied with the

**U.S. Motion to Vacate Order of May 23, 2003**
U.S. v. [1] Fernando Gómez-Rosario
Criminal No. 00-108 (DRD)
Page No. 3

Regional Director's response, he may file a national appeal with the Office of General Counsel in

Washington D.C. 28 C.F.R. § 542.14. Appeal to the Office of General Counsel is the final

administrative appeal in the Bureau of Prisons.

The Prison Litigation Reform Act, 42 U.S.C. §1997e(a), states that "no action shall be

brought with respect to prison conditions under section 1983 of this title, or any other Federal

law, by a prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted." Casanova v. Dubois, 289 F. 3d 142, 146

(1st Cir. 2002) (the prisoners' failure to demonstrate in their pleadings that they have satisfied this

exhaustion requirement divested the lower court of jurisdiction to consider the case); Medina-

Claudio v. Rodríguez-Mateo, 292 F.3d 31 (1st Cir. 2002) (district court dismissed plaintiff's suit

alleging that prison conditions violated his constitutional rights for failure to exhaust

administrative remedies); Curry v. Scott, 249 F.3d 493, 501 n. 2 (6th Cir. 2001) ("we note,

however, that, while it is true we have concluded § 1997(e) does not impose a jurisdictional bar

to federal jurisdiction, we have also concluded that the obligation to exhaust administrative

remedies before resorting to federal court is a mandatory one"). The purpose of the exhaustion

requirement in the Prison Litigation Reform Act is to improve prison administration, filter out

frivolous claims, and clarify the contours of controversies for cases that are ultimately brought to

court. United States v. Al-Marri, 239 F. Supp. 2d 366 (S.D.N.Y. 2002).

There is no evidence in the record that the Defendant exhausted M.D.C.-Guaynabo's

available administrative remedies. See Attachment A: Declaration of José Cordero, Paralegal

Specialist for the Federal Bureau of Prisons. The United States prays that this Honorable Court

U.S. Motion to Vacate Order of May 23, 2003
U.S. v. [1] Fernando Gómez-Rosario
Criminal No. 00-108 (DRD)
Page No. 4

vacate its May 23, 2003 Order and require the Defendant to first submit his claim to the prison's

internal grievance process. The Defendant's failure to exhaust administrative remedies bars the

courthouse door to entertain the instant issue.

## II.  The Defendant Has Not Followed M.D.C's
## Procedures to Request Legal Research Materials.

The procedures for using the law library and requesting legal research materials are

explained in the "Education, Admission and Orientation Handbook" and in the "Library Rules

and Procedures" that are given to all inmates upon their arrival at M.D.C.-Guaynabo.[1]  See

Attachments B and C.

Inmates may get access to the law library through an "Inmate Request to Staff" form addressed to

his Unit Team.  The Unit Team is in charge to make arrangements with the Education

Department to determine availability of the law library and to escort the inmate when necessary.

Inmates who needs access to law books or materials must submit an "Inmate Request to Staff"

form to the Library Coordinator.  They are also allowed to borrow law books and materials for a

period of two (2) days free of charge.  If additional time is needed for research, the inmate must

submit an "Inmate Request to Staff"requesting an extension of time to keep the materials.

Defendant Gómez-Rosario entered at M.D.C.-Guaynabo on April 21, 2000 and started

requesting access to legal research materials on January 8, 2001.  Documentation shows that on

---

[1]These procedures have also been posted in Spanish/English on the bulletin boards
located in the housing units.

March 29, 2002, the Defendant requested an extension of time to keep legal materials from the

law library. The staff granted him an extension of five (5) days. On April 1, 2002, the Defendant

submitted an "Inmate Request to Staff" requesting an additional extension of time and

complaining that staff requested the legal materials borrowed be returned or that the Defendant

pay for them. The Defendant was advised that the materials were in his possession for

approximately two (2) months, exceeding the time authorized. See Attachment D: Inmate

Request to Staff dated April 1, 2002. Even though the Defendant was granted two (2) additional

time extensions, he neither returned the copies within the time frame given nor paid for them.

On April 17, 2002, staff requested the Defendant to pay twenty-eight dollars and seventy

cents ($28.70) for the duplicated materials but the Defendant refused to sign the "Request for

Withdrawal of Inmate's Personal Funds." Nevertheless, on April 30, 2002, the Defendant

requested additional time to review the legal materials and the law library staff granted him two

(2) extra weeks, to expire on May 14, 2002.

The Bureau of Prisons' policy recognizes that inmates may need to duplicate legal

research material. As a result, procedures have been established in order to meet the inmates'

needs. See Attachment E: Program Statement Number 1315.07 dated 11/05/99. Duplicate copies

of legal documents cost ten cents ($0.10) per page. Upon an indigent[2] inmate's request for

copies, staff will contact his unit counselor for an indigence verification. If the inmate has no

---

[2]According to the Bureau of Prison's policy, an indigent inmate is one with an account
balance of less than six dollars ($6.00) for thirty (30) consecutive days. See Attachment F: Trust
Fund Reference Manual, Chapter 1, Section 1, page 1.

**U.S. Motion to Vacate Order of May 23, 2003**
<u>U.S. v. [1] Fernando Gómez-Rosario</u>
Criminal No. 00-108 (DRD)
Page No. 6

funds, staff shall waive the cost of a <u>reasonable</u> number of copies. The Defendant has not been

indigent during his incarceration. A review of defendant's account statement reveals that from

October 12, 2000 to September 11, 2002, Gómez-Rosario received six-thousand one hundred and

ten dollars ($6,110.00) from outside sources. Defendant's account balance as to June 27, 2003

was fifty-one dollars and sixty-three cents ($51.63). <u>See</u> <u>Attachment G</u>: Inmate's Account

Statement.

    On May 3, 2002, during an inspection of the Defendant's property, staff found law library

books that the Defendant was not authorized to have in his possession. The Defendant had

damaged and altered one of the books by removing the law library stamp and hard cover, and

writing his name and register number on the book alleging it was his. The Defendant was

charged with possession of anything not authorized and damage to government property valued

less than one-hundred dollars ($100.00). A Disciplinary Hearing was held and the Defendant

was sanctioned with monetary restitution of forty dollars and seventy-five cents ($40.75). <u>See</u>

<u>Attachment H</u>: Declaration of Marilyn Castro, Education Technician at M.D.C.-Guaynabo, and

<u>Attachment I</u>: Incident Report and Pictures of the damaged book.

    On June 25, 2003, during an institution "shakedown," the Defendant was found in

possession of legal documents containing different case captions. The legal documents found

belonged to other inmates already designated to institutions in the United States; to another

inmate living in a different housing unit at M.D.C.-Guaynabo, and from an inmate living in the

Defendant's own housing unit. This is contrary to the Bureau of Prison's regulations that

prohibits inmates to have legal documents of other inmates in their possession unless otherwise

**U.S. Motion to Vacate Order of May 23, 2003**
U.S. v. [1] Fernando Gómez-Rosario
Criminal No. 00-108 (DRD)
Page No. 7

authorized by the Warden. See Attachment E: Program Statement Number 1315.07 dated

11/05/99, pages 11 - 13. It appears that the Defendant Gómez-Rosario is conducting legal

research for other inmates.

Notwithstanding the above, the Defendant has consistently received assistance from the

law library staff, including providing legal research materials, access to the law library, copies of

cases, and locating cases for the inmate. From January 8, 2000 through August 20, 2002,

M.D.C.-Guaynabo's education department provided the Defendant with approximately two-

hundred and eight (208) different items such as cases, program statements, and federal registers.

See Attachment J: M.D.C.-Guaynabo's Law Library Check-Out Log. In order to accommodate

the Defendant, law library staff has lent him the materials without charging him for the copies.

Staff had made many attempts to collect the materials issued to the Defendant. While he has

returned some of the items when told that no more copies would be provided, he has also refused

to return or pay for approximately five hundred and ten (510) other cases and program statements

borrowed from the education department.

From April 12, 2003 through June 21, 2003, the Defendant visited the law library on

thirty-one (31) separate occasions and was provided with approximately two-hundred and eight

(208) cases. In this period alone, the Defendant was provided with 1031 pages of copies. See

Attachment K: Inmate Law Library Research Signing Sheet. The Defendant has received

constant assistance from the law library staff. However, he has demonstrated a continuous

**U.S. Motion to Vacate Order of May 23, 2003**
U.S. v. [1] Fernando Gómez-Rosario
Criminal No. 00-108 (DRD)
Page No. 8

disregard for the procedures.

### III.  The Defendant Has Incurred Disciplinary Problems Related to the Law Library.

A review of the Defendant's disciplinary record reflects that he has committed several infractions of the Bureau of Prison's disciplinary code.  See Attachment L: Computer Generated Print Out of Disciplinary Record.  Moreover, his disruptive behavior in the law library has created a serious security problem.

In one particular incident, the Defendant walked out of the law library to the education lobby to greet and hug another inmate.  A staff approached him and escorted him to the Education Department Supervisor's Office.  He was reprimanded for loitering and having unauthorized contact with another inmate.  The Defendant was aware that this type of behavior is not allowed in the law library.  See Attachment M: Declaration of Juan Gutierrez, Recreation Specialist at M.D.C.-Guaynabo.

Defendant Gómez-Rosario was also reprimanded for loitering, taking excessive amounts of writing paper without staff authorization, and for socializing with a female inmate in the education lobby.  See Attachment N: Declaration of Asmirna R. Layer, Teacher at M.D.C.-Guaynabo.

**U.S. Motion to Vacate Order of May 23, 2003**
U.S. v. [1] Fernando Gómez-Rosario
Criminal No. 00-108 (DRD)
Page No. 9

Recently, a Correctional Officer was called by the education technician to escort inmates back to their units. Upon his arrival, the Officer observed another Officer telling the Defendant that he was going to be escorted back to his unit for the 4:00 p.m. official count. The Defendant complained that he had not finished making his copies and asked the inmate worker to finish reproducing the copies for him. The inmate worker denied the Defendant's petition because the inmate worker was ordered to clean and store the library books. Defendant Gómez-Rosario became agitated when the inmate worker refused to finish making copies. The inmate worker got upset and the officer escorted the Defendant to his housing unit before the situation escalated into a physical confrontation. See Attachment O: Declarations of Jorge Rivera and Primo Alonso, Correctional Officers at M.D.C.-Guaynabo.

Defendant Gómez-Rosario's threatening behavior constitutes a lack of respect for authority that seriously compromises the order and security of the institution.

## IV.  The Defendant is Entitled to No More Than Reasonable Access to the Law Library

Inmates have a constitutionally protected right of access to the courts. Bounds v. Smith, 430 U.S. 817, 823 (1977). However, the right of access to the courts is not unrestricted and does not mean that an inmate must be afforded unlimited litigation resources. Lewis v. Casey, 518 U.S. 343, 352-55 (1996). In Lewis, the Supreme Court held that an inmate claiming that he was denied his right to the courts must show that he suffered an actual litigation related injury or legal

prejudice because of the actions of the defendants.  Id.  See also DePineda v. Hemphill, 34 F.3d 946, 948 (10th Cir.1994) (an inmate "has no absolute, unconditional right of access to the courts and no constitutional right of access to prosecute frivolous or malicious actions").  The Constitution does not protect against every inconvenience of prison life. Perry v. Jones, 437 F.2d 759 (5th Cir. 1971), cert. denied, 404 U.S. 914 (1971); Owen v. Shuler, 466 F.Supp. 5 (N.D. Ind. 1977), aff'd 594 F.2d 867 (7th Cir. 1979).

As long as prison authorities provide inmates with supplies and services that are necessary for filing court documents there is no violation to a constitutional right.  This is consistent with 28 C.F.R. § 543.10(a), which states: "The Warden shall afford an inmate reasonable access to legal materials and counsel, and reasonable opportunity to prepare legal documents." (emphasis added).  Moreover, the Defendant's constitutional right of access to the courts is also being protected by the legal representation of counsel Miriam Ramos in his criminal proceedings.

In this case, the Defendant has been given more than reasonable access to legal research materials and to the law library.  However, he continues to disregard the administrative procedures, abuse his law library privileges, and causes many behavioral and disciplinary problems related to law library use.

WHEREFORE, the United States moves this Honorable Court to vacate its May 23, 2003 Order as the Defendant failed to exhaust the administrative remedies available, or, in the alternative, order that the Defendant be provided with only reasonable access to the law library consistent with constitutional requirements and BOP policies, and ordered to pay the standard fee

**U.S. Motion to Vacate Order of May 23, 2003**
U.S. v. [1] Fernando Gómez-Rosario
Criminal No. 00-108 (DRD)
Page No. 11

for copies requested.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 8th day of September, 2003.

H.S. GARCIA
UNITED STATES ATTORNEY

Daniel J. Vaccaro
Assistant United States Attorney
U.S.D.C. No. 214801
Torre Chardón Bldg, Suite 1201
350 Carlos Chardón Ave.
Hato Rey, PR 00918
Tel. No. (787) 766-5656

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of September, 2003, that a copy of the foregoing motion has been delivered, via regular mail, to: Miriam Ramos, Esquire, P.O. Box 191352, San Juan, Puerto Rico 00919 and Alma G. Lopez, Esq., M.D.C.- Guaynabo, P.O. Box 2146, San Juan, PR 00922.

Daniel J. Vaccaro
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE PUERTO RICO

```
*******************************
United States                    *
                    Plaintiff    *
                                 *
v.                               *        CRIM NO. 00-108 (DRD)
                                 *
Fernando Gomez                   *
                                 *
                    Defendant    *
*******************************
```

## DECLARATION OF JOSE A CORDERO

In accordance with the provisions of 28 U.S.C. Section 1746, I, Jose A. Cordero, do hereby make the following declaration, under penalty of perjury, pertinent to the above-styled action.

1.     I am presently employed by the Federal Bureau of Prisons as Paralegal Specialist for the Metropolitan Detention Center (MDC) Guaynabo, Puerto Rico. I have had this position since March 21, 2000.

2.     A review of the Bureau of Prisons' computerized records known as SENTRY revealed that Inmate Fernando Gomez, Register Number 18938-069, has not filed any request for administrative remedy available through the Bureau of Prisons in order to seek maximum access to MDC Guaynabo's law library, or request free legal research materials.

I declare under penalty of perjury that the above statement is true and correct.

Executed this ___8___ day of _____ 2003.


_____
Jose Cordero
Paralegal Specialist

**B**

EDUCATION/RECREATION
STAFF ROSTER


Supervisor of Education.....................J. David Ortiz

Office Assistant............................Joel Suárez

Education Technician........................Marilyn Castro

GED Coordinator.............................Asmirna R. Layer

ESL Coordinator............................Reinaldo Colón

Teacher....................................Ada Rivera

Recreation Specialist.......................Victor Colón

Recreation Specialist.......................Juan Gutierrez

Contract Art and Crafts Instructor..........Ruth Rosado

Contract Music Instructor...................Carlos Lagos

Contract Parenting Instructor...............Dr. Inma Rios

Contract Bookbinding Instructor.............Johnny Rojas

Contract Librarian.........................Carmen Cruz

Contract Job Placement Coordinator..........Carmen Cosme

Volunteer Parenting Support Group...........Yvette Vizcarrondo

Volunteer Health Awareness Program..........Maritza Rolon


Education A&O Handbook  Revised April 08, 2002

## INTRODUCTION TO EDUCATION PROGRAMS

All education programs are open to any inmate/detainee regardless of race, religion, national origin, sex, handicap, or political affiliation.

The goal of the Education Services is to provide an opportunity for quality instruction to federal inmates as well as to other detainees. Inmates/detainees are offered academic programs ranging from basic education (8.0 level) to post-secondary education in the form of correspondence courses.

Although the Metropolitan Detention Center is not a program-oriented institution, currently there are two mandatory academic courses for federal inmates: Literacy and English as a Second Language.  Pre-trial inmates and INS detainees are welcome to participate on a voluntary basis.  However, if a pre-trial inmate or detainee enrolls in a class, he/she will be expected to adhere to the established rules and regulations concerning education programs.

The **1994 Violent Crime Control and Law Enforcement Act** (P.L. 103-322) mandates that an inmate, with a date of offence on or after September 13, 1994, but before April 26, 1996, lacking a high school credential, participate and make satisfactory progress in the literacy program in order to vest earn Good Conduct Time (GCT). The **1995 Prison Litigation Reform Act** (P.L. 104-134; April 26, 1996) provides that in making GCT awards, the Bureau shall consider whether inmates have earned or are making satisfactory progress towards attainment of a GED credential.

The non-mandatory programs include Adult Continuing Education (ACE) classes in parenting and release preparation and bookbinding. An advanced occupational training program in bookbinding is available for designated inmates for a total of 250 hours. This program is also available for non-designated inmates/detainees a total of 50 hours.

Correspondence courses are also available at the inmate's expense. If an inmate wishes to enroll in a correspondence program, he/she may submit an Inmate Request to Staff form and an Education Specialist will schedule an interview with the inmate.

I.    PROGRAMS

    A.    BASIC LITERACY   (PRE-GED)

        1.    Mandatory for all individuals functioning below the required 8.0 level on any/all of the sub-tests on the Adult Basic Level Exam (ABLE) or the Spanish Assessment of Basic Education (SABE2) for Hispanic inmates.  ABLE/SABE 2 2 testing is mandatory for all **designated** inmates.  New and/or incoming inmates will be placed on "Call-Out" for ABLE/SABE2  testing unless their Education record indicates previous satisfactory testing.

        2.    Basic Literacy is designed to assist individuals in developing basic reading, writing and math skills.  It is also a preliminary phase to prepare inmates for the General Education Development (GED) program. The Basic Literacy program also intends to meet the needs of those inmates identified as having a Special Learning Need(SLN).

        3.    Class Schedule:

            Classes are held Monday thru Friday at various times. For specific days and times, you may reference the quarterly education activity schedule that has been posted in your unit.

        4.    Completion Policy:

            This is a self-paced, open-ended program.  You must retest (sub-test) in the area(s) in which you scored below an 8.0 on the ABLE or SABE 2. Incentives for inmates who achieve functional literacy will include edible items such as candy, cookies, and refreshments. In addition, you will receive a certificate of achievement upon completion.  Individuals are required to remain in the Basic Literacy program until they have tested out or reached their 240 hour requirement.  If an individual withdraws from the program without meeting the GED certification, he/she will not be eligible for a pay raise above the Inmate Performance Pay grade level four. In addition, he/she will receive an EDI status of GED Unsat and will not be able to earn good conduct time.

5.   Policy Referenced:

P. S. 5350.25, September 29, 1997, Literacy
Program, P.S. 5251.05, Inmate Work Performance Pay
Program, December 31, 1998, Inmate Legal
Activities, November 5, 1999, P.S. 5265.11,
Correspondence, P.S. 4500.04, Trust Fund,
Institution Supplement 5580.06, Inmate Personal
Property.

## B.   GENERAL EDUCATIONAL DEVELOPMENT (GED)

1.   This program is self-paced/open-ended. The
individual will be preparing for the GED test and
will be eligible for a high school equivalency
diploma issued by the Oklahoma Department of
Education.  Inmate Tutors are available to assist
you with each subject of GED.

2.   Enrollment Criteria:

A verifiable ABLE/SABE2 score of 8.0 or above in
each sub-test is required, and each applicant must
meet with the designated GED Coordinator.
Individuals are required to remain in the GED
program for a minimum of 240 hours or until they
have achieved an overall GED test average of 45
and 40 in each individual sub-test.

3.   Class Schedule:

Same schedule as the one for the Basic Literacy
classes

4.   Completion Policy:

You must achieve an average score of 45 on the GED
test, and the minimum of 40 on each of the
individual scores.  The test is administered by
certified staff from the Education Department in
the institution. You will receive a high school
equivalency diploma and an achievement award of
$25.00 upon successful completion of the program
and test.

NOTE: **The inmate may complete both the Basic
Literacy and the GED programs within the
240 hour time frame.**

**Education A&O Handbook** 3 **Revised April 08, 2002**

C.    ENGLISH AS A SECOND LANGUAGE

1.    This program is a self-paced/open-ended enrollment program.  Its primary function is to meet the needs of limited English proficient inmates confined at this facility, who are required to attend an ESL program, and to encourage non-English detainee/inmates, to develop the skills necessary to function at the equivalent of the eighth grade in competency skills, as measured by a score of 225 in the Comprehensive Adult Student Assessment System test (CASAS) form 522.

2.    The ESL program at MDC Guaynabo is offered at two different levels:  Basic and Advanced.  Students are administered the placement (CASAS) test and enrolled in the appropriate level according to the test scores.  Inmate Tutors are available to assist you with each subject of GED.

3.    ESL is a valuable aide to Spanish-speaking inmates in preparation for the sixth test of GED Battery that will came into effect during the year 2000.

4.    Class Schedule:

      ESL classes are held Monday thru Friday at various times. For specific days and times, you may reference the quarterly education activity schedule that has been posted in your unit.

5.    Completion Policy:

      Student completions in ESL are based on the student's ability to achieve a score of 225 inmates.  Upon successful completion, the student will receive a certificate from the Education Department and will be awarded an achievement award  worth no more than $25.00 in value.


D.    ADVANCED OCCUPATIONAL EDUCATION

BOOKBINDING

This course was designed to train and prepare the student in the method of bookbinding through the different techniques.  Students will be trained to perform a job where he/she can work in a library, public and private companies, schools, and a personal business.  The complete course consist of completing a minimum than 250 hours and 10 projects for the

**marketable** skills level and 50 hours and a maximum of 6 projects for the **exploratory** skills level. The student will receive a certification from the Puerto Rico Institute of Culture, which certifies the student as a bookbinding artist at the marketable skills level. They will also grant the student a $ 1,000.00 certificate on a yearly  basis to purchase equipment, after they are released and have established a personal business. Students that complete the exploratory level will be awarded a certificate of completion and attend the Inmate Achievement Day activity.

## II.   ORIENTATION PROGRAMS

### A.   RELEASE PREPARATION

1.   The Release Preparation program is designed to assist inmates in preparing themselves for release. Inmates will be given aid in developing plans for their personal lives and for work. This program offers classes and information seminars concerning personal, social, and legal responsibility of civilian life.  Routinely scheduled information sessions with U.S. Probation Officers, U.S. Parole Commission members and other agencies and employers are available.

2.   Schedule:

Release Preparation will be scheduled on a quarterly basis and will run for six sessions or more.

### B.   INMATE JOB PLACEMENT

The inmate job placement program is designed for those inmates who are enrolled in the Pre-release Program.  The program provides job information on the current employment market in Puerto Rico, as well as opportunities for inmates to acquire skills in job preparation to find a job.  Efforts are  made to locate job opportunities for each inmate for post release. A Mock Job Fair is scheduled on a yearly basis. The fair gives inmates the opportunity to experience the interview and resume writing process and gain confidence in job search skills.

### C.   PARENTING

The Parenting Program is designed to provide three impo ant components: Parentir ,Skills, Visiting Room ..ctivities, and Social Se. vices. A contract employee visits the institution once a week to teach parenting skills for a total of 36 hours. A special activity is scheduled on a quarterly basis in the visiting room. This activity is primarily intended to provide information about the various social service entities and agencies available in the community. Upon completion of the program, the inmate will receive a certificate of participation, a photo and attend the Inmate Achievement Day activity.

## III. LEISURE TIME ACTIVITIES

### A. LIBRARY SERVICES

1. The institution has a Legal and Leisure Library located in the Education Department.

2. An up-to-date library collection of fiction and non-fiction books (softbound), magazines, and newspapers is maintained in each of the living units. Reading materials are located in one of leisure rooms found in each unit.

   Circulating materials, i.e., reference books, legal materials, are available through the following check out procedures.

   a. Books located in the Education Library may be checked out for 15 days. Inmates may borrow two books and one magazines with the option to renew at the time of expiration if no one has requested the same book/magazine(s).

   b. Education/Recreation staff or a library aide will exchange the books in each of the units, on a quarterly basis.

   c. Inmates/detainees who abuse or misuse library material will be subject to appropriate disciplinary action.

   d. Library Hours:

      Sunday - Saturday: Unit library will be open during normal operating hours.
      The reference library, located in Education, will be open from Monday - Friday from 7:00 a.m. to 3:30 p.m. Tuesday and Thursday from 5:30 p.m. to 8:00 p.m. **Inmates may request reading or reference material via an "Inmate Request to Staff" (cop out) form.**

3. Legal Library Checkout Procedure:

**Education A&O Handbook 6 Revised April 08, 2002**

a. The main law library is located in the 'ducation Department. A' isic law library is provided in the Special Housing Unit and Immigration and Naturalization Services legal books are also available for INS cases. These libraries are to be maintained by the Library Coordinator.

Materials mandated by Program Statement 1315.07, Inmate Legal Activities, November 5, 1999, will be provided in the libraries.

b. If an inmate/detainee needs access to law books or materials, he/she must submit an "Inmate Request to Staff" form to the Library Coordinator. The request should contain the subject matter, any case references (if available), the inmate's name, registration number and housing unit.

Photocopies of the requested material will be provided when a duplicate copy of any given book is not available. A complete list of available law library materials is provided to each of the housing units for convenience and reference. Request this list from your counselor. You may also request a copy from the library.Special Housing Unit inmates should direct requests for use of the basic law library to custodial staff assigned to that unit. Materials not contained in the SHU basic law library can be requested from the main law library. These requests should be directed to the Supervisor of Education. The Supervisor of Education will provide photocopies of the requested materials, in accordance with paragraph "d" below.

c. Inmates will be allowed to borrow law books and materials from the library for a period of two days. An education staff will deliver the requested law materials to the inmate within two days after the request has been received. Upon delivery, the inmate will sign the check out log to acknowledge receipt of the material(s). In the event that more time is needed for research, the inmate must submit a request to staff asking for an extension.

Theft or destruction of law library materials may result in disciplinary action in accordance with **Program Statement 5270.7, Inmate Discipline and Special Housing Unit.** Potential sanctions include monetary restitution to the United States Government.

d. Duplicate copies of legal documents may be provided at the cost of $0.10 per copy. A BP

24 form will be prepared for the inmate's
signature. For those inmates confined in the
Special Housing Unit, Education staff will
duplicate legal documents at a cost of $0.10
per copy. Copies of legal materials or legal
documents by indigent inmates will be in
accordance with Program Statement 1315.07.
Upon an indigent inmate's request for copies,
staff will contact the inmate's unit
counselor for verification of the inmate's
indigence. If staff confirms that the inmate
is without funds, staff shall waive the cost
of a reasonable amount of copies. Submission
by an indigent inmate of a request is
regarded as consent to the staff's discretion
in limiting the number of copies made, or of
the materials copied. Staff reserves the
right to require the inmate to sign a PB-CMS-
21/24 form and charge the reimbursement
against the inmate's account as soon as the
inmate has the funds.(See Program Statement
4500.4 - Trust Fund Management)

e.    Inmates may purchase or receive law materials
from outside sources.  The purchase, receipt
and accumulation of such materials are
subject to the procedures detailed in
Institution Supplement 5580.06, Inmate
Personal Property. Inmates are encouraged to
receive legal  documents from the courts or
from their attorneys through the mail.
Special mail status may apply to these
documents in accordance with the procedures
detailed in Program Statement 5265.11,
Correspondence.  Although the preferred
method of receiving legal documents is via
air mail, a "Legal Documents Mail Box" is
available, located at the front lobby
entrance of the institution.  Attorneys may
deposit legal documents for their inmate
clients in the designated box.

The administrative hours for the Leisure and
Main Law Libraries are as follows:

Monday through Friday 7:00 a.m. - 11:00 a.m.
                     12:00 p.m. -  3:30 p.m.
Tuesday and Thursday  5:30 p.m. -  8:00 p.m.

4.    Legal Rounds - Are conducted on a daily basis.
Inmate requests are filled by staff or law library
clerks and delivered to the housing units daily.
If an inmate has a special or urgent request for
legal materials or photocopies outside the normal
operating hours, he/she should contact his/her
counselor, who will make arrangements with the
education or recreation staff on duty to respond
to the request. Inmate Request to Staff (Copouts)
may be sent via institution mail or hand delivered

to an Education or Recreation staff member during a un'' visit.

5.    Typewriters are available for preparation of <u>court briefs and legal materials only</u>. Inmates abusing this privilege may be subject to disciplinary action. Ribbons are available for purchase in the Commissary.

C

# EDUCATION DEPARTMENT
# LIBRARY RULES AND PROCEDURES

## LEISURE LIBRARY SERVICES

The institution has a Legal and Leisure Library located in the Education Department.

A library collection of fiction and non-fiction books (softbound), magazines, and newspapers is maintained in each of the living units. Reading materials are located in one of the leisure rooms found in each unit.

Circulating materials, i.e., reference books, legal materials, are available through the following check out procedures:

a.      Books located in the Education Library may be checked out for 15 days. Inmates may borrow two books and one magazine with the option to renew at the time of expiration if no one has requested the same book/magazine(s).

b.      Education/Recreation staff or a library aide will exchange the books in each of the units on a quarterly basis.

c.      Inmates/detainees who abuse or misuse library material will be subject to appropriate disciplinary action.

d.      <u>Library Hours:</u>

               Sunday - Saturday: Unit library will be open during normal operating hours.

               The reference library, located in Education, will be open from Monday - Friday from 7:00 a.m. to 3:30 p.m. **Inmates may request reading or reference material via an "Inmate Request to Staff" (cop out) form.**

## LEGAL LIBRARY CHECKOUT PROCEDURE:

a.      The main law library is located in the Education Department. A basic law library is provided in the Special Housing Unit.

       Materials mandated by Program Statement, 1315.06 Inmate Legal Activities, will be provided in the libraries.

b.      If an inmate/detainee needs access to law books or materials, he/she must submit an "Inmate Request to Staff" form to the Library Coordinator. The request should contain the subject matter, any case references (if available), the inmate's name, registration number and housing unit.

       Photocopies of the requested material will be provided when a duplicate copy of any given book is not available. A complete list of available law library materials is provided to each of the housing units for convenience and reference. Request this list from your counselor. Special Housing Unit inmates should direct requests for use of the basic law library to custodial staff assigned to that unit. Materials not contained in the SHU basic law library can be requested from the main law library. These requests should be directed to the Supervisor of Education. The Supervisor of Education will provide photocopies of the requested materials, in accordance with paragraph "d" below. LEGAL MATERIAL WILL NOT LEAVE THE LAW LIBRARY AT ANY TIME. Theft or destruction of law library materials may result in disciplinary action in accordance with Program Statement 5270.7, Inmate Discipline and Special Housing Unit. Potential sanctions include monetary restitution to the United States Government.

c.      Inmates will be allowed to borrow law books and materials from the library for a period of two days. An

education staff will deliver the requested law materials to the inmate within two days after the request has been received.

d.    Duplicate copies of legal documents may be provided at the cost of $0.10 per copy. A BP 24 form will be prepared for the inmate's signature. For those inmates confined in the Special Housing Unit, Education staff will  duplicate legal documents at a cost of $0.10 per copy.  Copies of legal materials or legal documents by indigent inmates will be in accordance with Program Statement 1315.06. Upon an indigent inmate's request for copies, staff will contact the inmate's unit counselor for verification of the inmate's indigence. If  staff confirms that the inmate is without funds, staff shall waive the cost of a reasonable amount of copies. Submission by an indigent inmate of a request is regarded as consent to the staff's discretion in limiting the number of copies made, or of the materials copied. Staff reserves the right to require the inmate to sign a PB-CMS-21/24 form and charge the reimbursement against the inmate's account as soon as the inmate has the funds. (See Program Statement 4500.4 - Trust Fund Management)

e.    The administrative hours for the Leisure and Main Law Libraries are as follows:

Monday through Friday          7:00 a.m. - 11:00 a.m.
                               12:00 p.m. -  3:30 p.m.

Typewriters are available for preparation of court briefs and legal materials only. Inmates abusing this privilege may be subject to disciplinary action.

## PROCEDIMIENTO PARA EL USO DE LAS BIBLIOTECAS

## BIBLIOTECAS DE PASATIEMPO

La Institución posee una biblioteca Legal y de pasatiempo ("Leisure") dentro de el Departamento de Educación.

En cada unidad de vivienda de la Institución se mantiene al corriente una colección de libros de carpeta fina sobre temas de la vida real y de ficción, revistas y periódicos. Estos materiales de lectura se mantienen en uno de los salones de pasatiempo de cada unidad. Otros materiales de circulación general tales como libros y documentos legales y libros de referencia pueden ser consultados mediante el siguiente procedimiento:

> Los libros y revistas de la biblioteca del Departamento de Educación pueden ser obtenidos por 15 días con la opción de renovción si es que el libro no ha sido solicitado por otra persona. Un máximo de 2 libros y 1 revista se permitirá por recluso. Estos se entregarán o recogerán durante el recorrido del material legal. El listado de libros de pasatiempo de la Biblioteca del Departamento de Educación estará disponible a través del oficial de unidad.

El personal de educación/recreación o un asistente de bibloteca cambiará, trimestralmente, los libros asignados a las unidades.

Los reclusos que mutilen o hagan mal uso de los materiales de blibloteca estarán sujetos a las correspondientes medidas disciplinarias.

Horarios de Biblioteca:

> ¡Domingo - sábado: Las bibliotecas de las unidades estarán abiertas durante las horas normales de operación.

> La biblioteca de referencia, localizada en el Departamento de Educación, estará abierta en días laborables de 7:00 a.m. a 3:30 p.m.

Los reclusos pueden solicitar los materiales de lectura y de referencia por medio del formulario "Inmate Request to Staff" (copout).

## PROCEDIMIENTO DE USO DE LA BIBLIOTECA LEGAL:

La biblioteca legal principal está ubicada en el Departamento de Educación.    Los materiales impuestos a través del "Program Statement", 1315.06 "Inmate Legal Activities", serán provistos en las bibliotecas.

Si un recluso/detenido necesita acceso a libros o materiales legales, éste debe someter un formulario sobre "Inmate Request to Staff" dirigido al coordinador bibliotecario. La petición debe especificar el asunto o tema legal que solicita, la referencia o cita de los casos requeridos si la tiene disponible, el nombre del recluso, su número y su unidad de vivienda. Se le proveerá con una fotocopia del material solicitado siempre que no esté disponible un duplicado de dicho material o libro. Un listado completo de todos los materiales legales disponibles será provisto a cada unidad de vivienda para mayor conveniencia al consultar.  Vea al consejero de unidad para obtener dicho listado.

Los reclusos en unidades de vivienda especial (SHU) deberán dirigir a sus custodios las solicitudes para el uso de la biblioteca legal básica. Los materiales que no estén disponibles en dicha biblioteca básica podrán ser solicitados a la biblioteca legal principal dirigiendo la correspondiente solicitud al Supervisor del Departamento de Educación quien le proveerá con fotocopia del material solicitado, de acuerdo con el párafo "d" en esta página.

Los reclusos podrán tener prestados los libros y materiales legales que soliciten por el término de dos días. Un miembro del personal de educación entregará al recluso los materiales solicitados dentro de los próximos dos días de recibirse la correspondiente solicitud en el departamento. Al entregársele los materiales, el recluso firmará la hoja de salida de materiales como prueba del recibo de los mismos. En caso de que el recluso necesite el material por más tiempo del dispuesto, tendrá

Case 3:00-cr-00108-DRD    Document 373    Filed 09/08/2003    Page 28 of 31

que someter al personal una petición solicitando un término adicional.

El robo o destrucción de cualquier material de la biblioteca legal podrá resultar en la imposición de medidas disciplinarias según el **"Program Statement" 5270.7, sobre "Inmate Discipline and Special Housing Unit".** Las sanciones pueden incluir el pago de restitución monetaria a favor del Gobierno de Estados Unidos.

Los reclusos que interesen fotocopia de los materiales y documentos legales podrán obtenerlas al costo de $0.10 por copia. Copias de material o documentos legales para los confinados indigentes se harán de acuerdo con el "Program Statement" 1315.07. Cuando un recluso indigente haga un pedido de copias, el personal se comunicará con el consejero de ese recluso para confirmar que el confinado no tiene fondos monetarios. De confirmarlo, las copias se harán libres de costo, siempre que sea una cantidad razonable. El personal se reserva el derecho de pedirle al recluso que firme una hoja "PB-CMS-21/24 y cargar un reembolso a su cuenta tan pronto tenga fondos.

El horario para la biblioteca legal y de espaciamiento será el siguiente:

lunes a viernes    7:30 a.m. - 11:00 a.m.
12:00 p.m. - 3:30 p.m.

sábado - El Especialista de Recreo estará disponible para entregar cualquier pedido con carácter de urgencia. Estos pedidos se harán a través de un miembro del personal de la unidad.

Las máquinas de escribir en las unidades están disponibles para la preparación de **documentos al tribunal y materiales legales solamente**.


J. DAVID ORTIZ, SUPERVISOR OF EDUCATION/RECREATION


# REVISED MAY 2002

**D**

BP-S148.055  INMATE REQUE⬚ ⬚O STAFF CDFRM
⬚ 98

⬚.S. DEPARTMENT OF JUSTI⬚⬚                        ⬚EDERAL BUREAU OF PRISONS

| ⬚O:(Name and Title of Staff Member) | DATE: |
|---|---|
| Mr. Ortiz   Education | 4-1-02 |
| ⬚ROM: | REGISTER NO.: |
| Fernando Gomez R | 18938-069 |
| ⬚ORK ASSIGNMENT: | UNIT: 2-B |

⬚⬚BJECT: (Briefly state your question or concern and the solution you are requesting.
⬚⬚ntinue on back, if necessary.  Your failure to be specific may result in no action being
⬚⬚ken.  If necessary, you will be interviewed in order to successfully respond to your
⬚⬚quest.)

Dear Ortiz, I am writting you this time to Request a "time extention" to keep on using the copy of the cases which I have from the Law Library and are substantially needed in the preparation of my case for trial but Ms. Madelin Ortiz is just intrested in take the cases back or other wise for my to pay $10 for each page of the case which is manopolacrassing and oppresince to me, it violate my Right to free acces to the court and also violate the C.F.R. 28. and the $10 for each page and the law library charges is too much since on the street I would be able to get it for endos cent cence ($1) therefore I Request from you to look into the situation rather if I do not get and ansewer to this request within (72 hrs) I would have to proceed with a BP8 thank you very much.

_(signature)_

(Do not write below this line)

DISPOSITION:

Mr. Gomez.
As per our Program Statement 1315.07 "Legal Activities, Inmate" and 28 CFR - Sect. 543.11 (g) - "We may waive the cost of the legal material duplicated (copied) if the amount is minimal and your request for duplication is not large or excessive" - Unfortunately this is not your case. You have been requesting an exesive amount of copies) and we cannot continue doing this cost. We have been very diligent with you. You have copies in your possesion. For more than 2 months (sign and you have had time to review these cases, we are requesting for you to pay the cost of these copies in order for you to

⬚ecord copy - ⬚ile; Copy - ⬚nmate
(⬚⬚⬚⬚⬚m ⬚⬚⬚⬚ ⬚eplicated via WP)

This form replaces BP-1⬚⬚.070 dated ⬚⬚/⬚86
and BP-S148.07⬚ APR 94

_(signature)_  4/5/0⬚